NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0524n.06

Case No. 23-3157

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ELIZABETH SAAVEDRA,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

FILED
Dec 14, 2023
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: SILER, NALBANDIAN, and DAVIS, Circuit Judges.

STEPHANIE D. DAVIS, Circuit Judge. Petitioner Elizabeth Saavedra seeks review of a Board of Immigration Appeals ("BIA") decision, which affirmed an immigration judge's ("IJ") denial of her application for cancellation of removal under § 1229b(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* After considering the evidence in the administrative record, the IJ and the BIA found that Saavedra did not meet the "exceptional and extremely unusual hardship" requirement for her qualifying relatives under 8 U.S.C. § 1229b(b)(1)(D). We deny the petition for review.

I.

Saavedra, a native and citizen of Mexico, entered the United States in 1999 without admission by a United States immigration official. Saavedra filed an application for asylum and withholding of removal with the United States Citizenship and Immigration Services, which was referred to the United States Department of Homeland Security ("DHS"). DHS later initiated

removal proceedings by serving Saavedra with a notice to appear in immigration court to answer the removability charges due to her status as a non-citizen present in the United States without permission pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Saavedra, represented by counsel, appeared in immigration court and conceded her removability. She also filed an application for cancellation of removal and sought protection under the Convention Against Torture, 8 C.F.R. § 208.18 ("CAT").

The IJ held a merits hearing during which Saavedra offered evidence to support her applications. The government conceded at the hearing that Saavedra met the qualifying relatives, physical presence, and good moral character requirements for cancellation of removal, and DHS did not challenge her claim that she has no disqualifying convictions. But the government disputed that Saavedra met the exceptional and extremely unusual hardship requirement.

To support her claim of hardship, Saavedra testified on her own behalf. She stated that her husband, Jose Flores, is a lawful permanent resident of the United States and her three children are United States' citizens. She testified that her youngest son suffers from "a heart problem" but is currently stable and sees his doctor every two years to monitor his condition. (A.R. at 136, 163). Saavedra also admitted that despite her son's heart condition, he is not "limited to what he can do" and, in that vein, confirmed that he is even able to play sports. (*Id.* at 175).

Saavedra further testified that her husband is a recovering alcoholic who, at the time of the hearing, had been sober for the past six years. The IJ received testimony detailing Flores's troublesome past with alcohol and drug use, including that he was unable to stop even after receiving counseling and participating in therapy and Alcoholics Anonymous. Saavedra explained that Flores was finally able to stop drinking by "spend[ing] more time with [his family]." (A.R. at 138).

Regarding the family's finances, Saavedra testified that both she and Flores were gainfully employed, with Flores's income comprising 65 percent of their household income, and assets of $70,000 in cash and equities. She also testified that her family receives health benefits through Flores's job and if she were required to return to Mexico, her children would remain under his current health insurance policy—a fact which Flores confirmed. Even with their health care coverage squared away, Saavedra testified that she was not sure that Flores would be able to provide for the children in her absence "because [she has] been living here almost [her] whole life." (A.R. at 164).

Another concern for Saavedra was that Flores was shot in front of their home in Michigan about eight years prior to her hearing. And although the shooter was caught and arrested, he posted bond, was released, and apparently left the jurisdiction. According to Saavedra, her family members saw the shooter in Mexico "maybe . . . that same year [as the shooting], in 2010 or 2011[,]" but they confirmed that the shooter did not interact with or threaten her family. (A.R. at 159–60). Saavedra also opined, based on "what [she] heard on the news," that if she were to return to Mexico, authorities there would not protect her from danger—including from theft and other general crimes. (A.R. at 145–46).

Flores also testified at the hearing. He stated that he has previously been arrested for drug and alcohol use but explained that he was now sober and had been for at least seven years—a fact he attributed to "family support." (A.R. at 249–50, 254). Flores also explained that he told his children, "without your mother, I wouldn't have been able to, uh, accomplish it." (A.R. at 256). When asked what impact Saavedra's removal from the United States would have on his sobriety, Flores responded, "I wouldn't be able to give you a concrete answer," and explained that it took him a long time to get sober. (A.R. at 257). He concluded by stating, "I do not know what will

happen. But I, I do feel . . . really sure, I mean . . . I can assure myself . . . being together with my family." (*Id.*)

Regarding the man who shot him in 2010, Flores said he "hear[d] rumors" that the shooter was sent back to Mexico but was unsure about whether the shooter was currently in jail. (A.R. at 259–60). Flores relayed that the shooter's father had approached him after the shooting and explained that the shooting was unintentional. Flores also stated, "these are just rumors," when asked if the shooter had family in Mexico, and he confirmed that he did not know if the shooter was currently in Mexico. (A.R. at 261).

After the hearing, the IJ issued an oral decision finding Saavedra removable and denying her applications for relief from removal and CAT protection. Saavedra appealed the IJ's decision to the BIA, which issued a separate opinion and dismissed her appeal. The BIA agreed with the IJ's conclusion that Saavedra failed to demonstrate that her removal would cause an "exceptional and extremely unusual hardship" to a qualifying relative under 8 U.S.C. § 1229b(b)(1). It therefore upheld the IJ's denial of her application for cancellation of removal. In its decision, the BIA considered all of the hardship factors and found the following: (1) although Flores may experience hardship from the loss of Saavedra's support of his sobriety if she were removed: he has maintained his sobriety for many years now, his children can still provide him with motivation and support, and Saavedra's physical departure would not render her completely absent from his life; (2) there is insufficient evidence in the record that Saavedra's son has a serious medical condition; (3) there is insufficient evidence that Saavedra will experience harm if she returns to Mexico; and (4) Saavedra's family will experience some financial and emotional hardship from her removal, although it will not be exceptional or extremely unusual. The BIA concluded that "the Immigration Judge considered the relevant hardship factors in the aggregate under the applicable legal standards

and appropriately analyzed and gave weight to [the] factors." (A.R. at 5). It therefore upheld the IJ's denial of asylum, withholding of removal, and CAT protection. Saavedra only petitions for review of the denial of her application for cancellation of removal.

## II.

Circuit courts have jurisdiction to review a "final order of removal." 8 U.S.C. § 1252(a)(1). That said, § 1252(a)(2)(B)(ii) prohibits federal appellate courts from reviewing discretionary issues, including those contained in a BIA decision regarding cancellation of removal. *See Bernardino Murillo v. Barr*, 795 F. App'x 437, 441 (6th Cir. 2019). Nevertheless, we have held that a BIA decision on whether a petitioner meets the "exceptional and extremely unusual hardship" requirement for a cancellation of removal determination "is the type of mixed question [of law and fact] that we have jurisdiction to review."[1] *Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021).

Determining the appropriate standard of review for cases involving mixed questions requires a "case-by-case approach." *Id.* at 1148. "If a question is more fact intensive, [courts] typically review the question with deference; if it is more legal, they typically review it de novo." *Id.* (citing *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020)). Where, as here, the mixed question requires the court to "'immerse' itself in a case's unique facts by 'weigh[ing]' all evidence for and against an answer, appellate courts should give trial courts primary decisionmaking authority by applying deferential review." *Hernandez v. Garland*, 59 F.4th 762, 771 (6th Cir. 2023) (quoting *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge,*

---

[1] On June 30, 2023, the Supreme Court granted certiorari in a case from the Third Circuit that addresses whether an agency determination of the "exceptional and extremely unusual hardship" requirement is a mixed question of law and fact reviewable under 8 U.S.C. § 1252(a)(2)(D). *See Wilkinson v. Att'y Gen. United States*, No. 21-3166, 2022 WL 4298337, at *1 (3d Cir. Sept. 19, 2022), *cert. granted sub nom. Wilkinson v. Garland*, 143 S. Ct. 2687 (2023) (Mem.). The case is still pending review.

*LLC*, 138 S. Ct. 960, 967 (2018)) (explaining that circuit courts have traditionally evaluated such decisions under the substantial evidence standard). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)).

While we have yet to decide the appropriate standard of review to apply to hardship determinations, we need not reach that determination here. *See Singh*, 984 F.3d at 1154. Under any applicable standard, the BIA's determination that Saavedra failed to establish the requisite "exceptional and extremely unusual hardship" to her family would be upheld. *See* 8 U.S.C. § 1229b(b)(1)(D).

### III.

Saavedra maintains that the IJ failed to properly apply the hardship standard, failed to consider the evidence presented before the court "in the aggregate," and ignored material evidence. As such, she requests that this court reverse and remand for further review. However, because the BIA issued a separate opinion in this case, we focus our review on the findings of the BIA as to Saavedra's cancellation of removal application; not the IJ's decision. *See Zometa-Orellana*, 19 F.4th at 976. In doing so, we find no basis for remand.

Under the cancellation-of-removal statute, the Attorney General is empowered to cancel the removal of an immigrant who:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;

(C)  has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D)  establishes that removal would result in exceptional and extremely unusual hardship to [the non-citizen immigrant's] spouse, parent, or child, who is a citizen of the United States or an [immigrant] lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).  The parties agree that Saavedra has met the physical presence and good moral character requirements for cancellation of removal.  And DHS does not challenge her assertion that she lacks any disqualifying convictions.  In view of the parties' positions concerning the first three eligibility factors, the only issue before this court is whether the BIA's conclusion that Saavedra failed to demonstrate her removal would cause an 'exceptional and extremely unusual hardship' to her qualifying relatives is legally sound.

To demonstrate the requisite hardship, an applicant for cancellation must "provide evidence of harm to [a] spouse, parent, or child *substantially beyond that which ordinarily would be expected to result from the alien's deportation*."  *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001) (emphasis in original) (citing H.R. Conf. Rep. No. 104-828); *see also Valdez-Arriaga v. Barr*, 778 F. App'x 380, 383 (6th Cir. 2019) (describing this as an "onerous standard").  In making this assessment, "all hardship factors should be considered in the aggregate."  *Araujo-Padilla v. Garland*, 854 F. App'x 646, 650 (6th Cir. 2021) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 64.).  And this aggregate consideration must also include "the ages, health, and circumstances of qualifying relatives."  *See Singh*, 984 F.3d at 1154 (quoting *Monreal-Aguinaga*, 23 I. & N. Dec. at 63); *Chiquirin-Delgado v. Garland*, No. 22-3059, 2023 WL 3737505, at *2 (6th Cir. May 31, 2023) (same).  We find that the BIA correctly concluded that Saavedra failed to meet this burden.

As an initial matter, Saavedra challenges the legal test for assessing "exceptional and extremely unusual hardship" as set forth in the BIA's seminal decision, *In re Monreal-Aguinaga*. 23 I. & N. Dec. at 59. *Monreal-Aquinaga* established that only factors affecting qualifying family members (i.e., United States residents or citizens), including the qualifying family members' ages, health, and circumstances are relevant to the question of hardship—not factors that reflect the impact on the applicant. *Id.* at 63. Thus, unlike cases involving the "extreme hardship" standard that applies in suspension-of-deportation cases, the "exceptional and extremely unusual hardship" standard applicable in cases of cancellation of removal is a more restrictive inquiry. *Id.* at 64. It, nevertheless, requires the court to consider all of the hardship factors in the aggregate. *Id.*

Saavedra argues that the *Monreal-Aquinaga* decision is "internally inconsistent" and that the standard "should be interpreted more liberally." (Pet. Br. at 7). In other words, Saavedra appears to argue that we should decline to follow *Monreal-Aguinaga* and, instead, apply the hardship standard in a different way. But the BIA has acknowledged that *Monreal-Aguinaga* is still the controlling standard. *See In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 469, 472 (BIA 2002) (discussing *Monreal-Aguinaga* and *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002), confirming that they are the "seminal interpretations of the meaning of 'exceptional and extremely unusual hardship'" and "are the starting points for any analysis of exceptional and extremely unusual hardship"). And we give "substantial deference" to the BIA's interpretation of the immigration statutes and accompanying regulations. *Lin v. Garland*, 81 F.4th 629, 633 (6th Cir. 2023). Accordingly, we will uphold the BIA's interpretation of a statute "unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (quoting *Sad v. INS*, 246 F.3d 811, 815 (6th Cir. 2001)). We see no such difficulties here. And because Saavedra does not point to any precedent in which we have held

otherwise, we will continue to follow the standard set forth in *Monreal-Aguinaga* here. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 504 (6th Cir. 2008); *Valdez-Arriaga*, 778 F. App'x at 383.

We now turn to the BIA's hardship determination. In its decision, the BIA first found Saavedra's evidence supporting her argument that her removal would be detrimental to Flores's sobriety to be inadequate. The BIA acknowledged that there is a risk of relapse if Saavedra were removed but noted that Flores would still have family support. While Saavedra would not be physically present, the BIA noted that she could still communicate with Flores by telephone or through video calls, and Flores would continue to have his children in the United States for support. The record supports this conclusion. For example, Flores testified that his children motivated him to get sober because as a father, he "know[s] that [he] cannot forgive [him]self if [he] was to go back and have a problem." (A.R. at 255). He also stated that his decision to cease his alcohol and drug use was "first of all, for [him]self." (*Id.*) Flores would thus retain other sources of motivation and support to maintain his sobriety. Based on this evidence, the BIA's finding was appropriate.

Next, the BIA determined that Saavedra failed to provide sufficient evidence to demonstrate that her son suffers from a "serious health issue" that would rise to the level of an exceptional and extremely unusual hardship. (A.R. at 4). The record shows that her son would remain on Flores's healthcare plan even if Saavedra were removed to Mexico. Moreover, Saavedra testified that her son has doctor's visits every two years and that his heart condition is stable enough that he can engage in strenuous physical activity, including sports. On appeal, Saavedra argues that "the emotional strain of losing his mother certainly has the potential to cause a recurrence in his heart problem." (Pet. Br. at 15). But this argument lacks any medical evidence to support its premise and nothing in the record demonstrates that this purported harm is anything more than, in

Saavedra's own words, "potential." (*Id.*) Even considering this evidence in the aggregate, that is combining it with the other evidence offered to demonstrate hardship to the qualifying family members, the BIA appropriately concluded that the evidence is insufficient for such an "onerous" standard. *See Valdez-Arriaga*, 778 F. App'x at 383.

The BIA similarly found Saavedra's argument that she is at risk of being harmed by the man who shot her husband in 2010 unavailing—insofar as it relates to its effect on her family—to show the requisite hardship. The BIA determined that Saavedra's fear of harm was "speculative" and attenuated in nature due to the large gap in time between the original shooting to the present, and the lack of information about the shooter's whereabouts. (A.R. 4). This finding is in accord with the record. Saavedra and Flores testified that (1) the shooting happened outside of their home in the United States, (2) the shooter's father conveyed that Flores was not the intended victim, (3) no one has seen the shooter since approximately 2010, (4) neither Saavedra nor anyone in her family has been threatened by the shooter or anyone associated with him, (5) the family did not know if the shooter lived in Mexico, and (6) the family was unaware if the shooter was currently incarcerated . The BIA appropriately determined that Saavedra provided insufficient evidence to demonstrate that removal would place her safety at risk—an event that would undoubtedly cause hardship to her qualifying relatives—or that her family would otherwise experience any hardship related to her removal on this point.

In affirming the IJ's decision, the BIA acknowledged that Saavedra's family would experience economic challenges if she were removed to Mexico. However, in relying on its own precedent, the BIA concluded that "adverse country conditions, a lower standard of living, and emotional hardship are common results of removal and do not rise to the level of exceptional and extremely unusual." (A.R. at 5 (citing *In re Andazola-Rivas*, 23 I. & N. Dec. at 323–24)).

Finally, Saavedra claims the BIA ignored material evidence in reaching its hardship determination. But it is unclear what evidence she claims was ignored because she has provided scant, if any, support for this argument. "It is insufficient 'for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.' And in instances where '[i]ssues [are] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,' we consider them forfeited." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (internal citation omitted) (alterations in original). Yet, even if this argument were not deemed forfeited, it does not appear that the BIA ignored any material evidence as it addressed all the issues raised by Saavedra—including Flores's sobriety, the health of Saavedra's son, the risk of harm to Saavedra regarding the 2010 shooter and its effect on her family, and the economic impact that Saavedra's family would face as a result of her removal to Mexico. Moreover, the BIA considered this evidence in the aggregate.

Based on our review of the BIA's decision, we are satisfied that in considering the evidence in the aggregate, the BIA did not err in applying the hardship test to Saavedra. As such, we find no basis for remand.

## IV.

For the reasons set forth above, we deny the petition for review.