NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0176n.06

Case No. 24-3345

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 31, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ERIK CENICEROS, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| PAMELA BONDI, Attorney General, | ) | APPEALS |
| *Respondent*. | ) | |
| | ) | O P I N I O N |

Before: CLAY, NALBANDIAN, and DAVIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Erik Ceniceros was born in Mexico but came to the United States as a child with his mother, Adela.[1] His brother is a United States citizen and his mother is a legal permanent resident. And though Ceniceros has a pending application for legal status, he is currently undocumented.

Ceniceros was first on Homeland Security's radar in 2009 when he received a notice to appear based on his removability. But because his removal was not an enforcement priority for Homeland Security at the time, those proceedings were administratively closed in 2016 without a formal resolution of his status. Then in 2018, Ceniceros was again flagged by immigration authorities and subject to removal. Ceniceros conceded his removability, but if he could show that his deportation would cause an exceptional and extremely unusual hardship on a United States

---

[1] Because Adela and Erik Ceniceros share a last name, we refer to Erik by his last name "Ceniceros" and Adela by her first name to eliminate confusion.

citizen or legal permanent resident, he could perhaps cancel his removal and stay. Ceniceros offered several reasons why his deportation would cause such a hardship on Adela, but the Immigration Judge found that any hardship was not exceptional and extremely unusual. Still, the judge granted Ceniceros voluntary departure so he could leave of his own accord, within a specified period, rather than be formally deported. Ceniceros appealed and the Board of Immigration Appeals affirmed. He appeals that denial. Because no error occurred, we deny the petition for review.

## I.

Ceniceros is a citizen of Mexico. He entered the United States in 1993 when he was seven after crossing the Rio Grande with Adela, and his brother followed about a year later.[2] Since then, Ceniceros has lived in Michigan and has never left the United States. He has no children, is not married, and lives with his brother, mother, and other extended family members. His brother is a United States citizen and successfully extended legal status to his mother, now a legal permanent resident, and has a pending I-130 application for Ceniceros.

Ceniceros has worked as a concrete finisher and foreman running construction sites for the same company in the United States for over four years. And he earns $30 an hour—about $1,200 to $1,400 per week. He also has paid his taxes every year. With this income, he supports Adela. He contributes about $600 a month to cover his and Adela's rent, utilities, and other bills so she does not have to work.

Ceniceros has had only one minor run-in with the police in 2008 for an open intoxicant while driving. But once it was clear that he had not been drinking—rather, a passenger had been— he received a short probation and the arrest was later erased from his record.

---

[2] His father was also a legal permanent resident, but through amnesty.

In August 2009, Ceniceros was designated by Homeland Security as "inadmissible" and received a notice to appear. 8 U.S.C. § 1182(a)(6)(A)(i). He applied for cancellation of removal and adjustment of his status in October 2011 and participated in removal proceedings through 2016. But his status was never formally resolved. Instead, he and the government reached an "administrative closure" in March 2016 because he was not a "priority for the department." This meant he could again be subject to removal proceedings at any time.

In 2018, that happened. Though no aggravating factors led to his arrest, proceedings for Ceniceros's removal were reopened in November 2018. And again he asked for cancellation of removal. Cancellation is a form of congressional lenity for individuals who are physically present in the United States long enough that their deportation would cause an exceptional and extremely unusual hardship on a United States citizen or legal permanent resident family member. 8 U.S.C. § 1229b(b). Ceniceros argued before the Immigration Judge (IJ) that his removal would cause such a hardship on Adela because of her medical conditions and the financial and emotional support that he has provided since his father's death in 2003.[3]

He primarily relied on his role supporting Adela in her medical care. She is sixty-four years old (sixty at the time of the hearing) and has several chronic health conditions. For example, she suffers from diabetes and high blood pressure—for which she regularly takes six or seven medications. Over fifteen years ago, she was diagnosed with cervical cancer, had surgery, and has been in remission for at least five years. She still has periodic—although infrequent—checkups and screenings, along with other medical appointments. In all of this, Ceniceros is a major partner for Adela. She doesn't have a driver's license so he is responsible for taking her to and from her appointments. Also, her English is poor, so Ceniceros serves as translator when he can. He has

---

[3] The government only contested whether Ceniceros had shown the necessary hardship.

filled this role over his brother because his brother's English is "not that good" and would have trouble communicating with doctors. A.R. at 182.

Next, he outlined the financial support he provides Adela. Ceniceros, Adela, and his brother live together in his step-uncle's house. Adela has not worked, and has instead relied on her sons for their financial support. Not because she is incapable of working, but because she does not have a driver's license and between Ceniceros and his brother, they can cover her costs. Adela divides the monthly expenses between each of her sons and each covers half of the rent and utilities. Still, his brother has other financial obligations—he pays child support for his three kids who live with their mothers. These child support payments add up to "quite a bit," consuming most of his brother's monthly income. *Id.* at 175. For all these reasons, Ceniceros has taken on the role of primary financial provider for Adela.

He finally cited the emotional support he provides to Adela. After his father died, Ceniceros became Adela's primary emotional support. When she needs advice, help, or comfort, she goes to him.

The IJ weighed all this evidence and determined Ceniceros was ineligible for cancellation of removal. Though he had not satisfied the "exceptional and extremely unusual hardship" standard, the IJ exercised his discretion to grant Ceniceros voluntary departure. 8 U.S.C. § 1229b(b)(1) (Cancellation of Removal); 8 U.S.C. § 1229c(b) (Voluntary Departure). In an oral decision, the IJ considered the offered testimony and evidence that supported the hardship. Though the IJ acknowledged Ceniceros's considerable role in supporting Adela, he found any hardship would not be exceptional. Adela receives a state-sponsored health plan that she won't lose when he leaves, and his brother lives in the same house and is "potentially available to step in and help" in Ceniceros's absence. A.R. at 46.

The IJ credited Adela's chronic medical conditions, but noted they are "essentially controlled by" medications, and her cancer checkups are "infrequent" given that her original surgery was more than fifteen years ago and she is in remission. *Id.* Ceniceros's brother lives in the same house and works the same construction job, so he likely has the same flexibility as Ceniceros to take her to appointments. And though it was clear that Ceniceros is the primary financial provider for Adela, she is not *incapable* of work. Instead, her sons have provided for her so that she *need not* work. Finally, though Ceniceros and Adela have a close relationship, the "important ties" she shares with her extended family could provide at least some "emotional commitment" to her in Ceniceros's absence. *Id.* at 48.

The IJ concluded that Ceniceros is a good son. He wouldn't abandon his mom, he'd stay in contact with her, and though the others in his family may not provide care in the same way or in the same degree that he might have, she won't be abandoned. Though Adela will face some hardship, the IJ found that it would "not reach the level that Congress requires." *Id.* Because Ceniceros had not met the exceptional-and-extremely-unusual-hardship standard, he was ineligible for cancellation of removal. Still, the IJ "favorably exercise[d] discretion" to grant Ceniceros voluntary removal. *Id.* at 48–49.

Ceniceros appealed to the Board of Immigration Appeals. The BIA issued its own opinion but concluded that the IJ's factual findings were not clearly erroneous and "affirm[ed] the decision of the Immigration Judge for the reasons stated therein." *Id.* at 7. Now, Ceniceros appeals the denial of his petition for cancellation of removal.

## II.

To receive cancellation of removal, an alien must establish that he has been physically present in the United States for at least ten years, is a person of good moral character, has not been

5

convicted of a qualifying offense, and his "removal would result in exceptional and extremely unusual hardship" to a qualifying United States citizen or legal permanent resident. 8 U.S.C. § 1229b(b)(1).

The IJ first determines whether to grant cancellation of removal and that decision is eligible for review by the BIA. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). Still, Congress has circumscribed our jurisdiction to review the appeal of denials of discretionary relief, which includes cancellation of removal. 8 U.S.C. § 1252(a)(2)(B); *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021). We are limited to review only "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). As explained by the Supreme Court, however, "questions of law" in § 1252(a)(2)(D) includes the application of a legal standard to "undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020). Thus a "mixed question of law and fact" is within our jurisdiction. *Id.* at 228 (quoting *U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394–95 (2018)). The Supreme Court has also clarified that the application of the exceptional-and-extremely-unusual-hardship standard "to an established set of facts is a quintessential mixed question of law and fact." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024).

So as far as any challenge asks us to review a factual question, we are without jurisdiction. *Id.* at 225 (citing *Patel v. Garland*, 596 U.S. 328, 339 (2022)). For example, we are precluded from reviewing an IJ's credibility finding, a finding about "the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." *Id.* Instead, our review takes the facts as found by the IJ and applies them to the legal standard.

6

To determine whether a challenge is reviewable, we look to the "*substance* of the immigrant's claim, not the *name*" he uses to describe it. *Singh*, 984 F.3d at 1149. When the appeal "amounts to nothing more than a challenge to the [agency's] discretionary and fact-finding exercises cloaked as a question of law," we are properly foreclosed from reviewing it. *Id.* (alteration in original) (quoting *Rios-Rios v. Barr*, 787 F. App'x 324, 326 (6th Cir. 2019)).

### III.

To be eligible for cancellation of removal, Ceniceros must show that "exceptional and extremely unusual hardship" will befall Adela. 8 U.S.C. § 1229b(b)(1)(D); *Tomaszczuk v. Whitaker*, 909 F.3d 159, 163 (6th Cir. 2018) (citing 8 U.S.C. § 1229a(c)(4)(A)). That means Adela must face a hardship that is "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). So the baseline for "hardship" is the hardship associated with every deportation. *Id.* To succeed under the statute then, the alien must prove his hardship is "rare"—that is, he must show more than the typical financial losses, familial separations, and reduced educational opportunities. *Id.* Ultimately, then, hardships are proven in the aggregate based on "all of the circumstances" of the qualifying relative. *Singh*, 984 F.3d at 1154 (citing *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001)).

There is a question about what our standard of review should be when the BIA, as it did here, rejects the alien's hardship argument. The Supreme Court has said that this is a mixed question of law and fact and that our review is at least "deferential" because the hardship inquiry is "primarily factual." *Wilkinson*, 601 U.S. at 225. But we have yet to resolve exactly what level of deference we should give to the BIA's conclusion. *Singh*, 984 F.3d at 1154; *Fernandez-Villafan v. Garland*, No. 23-3223, 2023 WL 8651267, at *3 (6th Cir. Dec. 14, 2023); *Pinales-Salas v.*

*Garland*, No. 23-3675, 2024 WL 1510662, at \*6 (6th Cir. Apr. 8, 2024). And other circuits have similarly noted that this remains an unresolved question. *See, e.g.*, *Cortes v. Garland*, 105 F.4th 124, 133–34 (4th Cir. 2024); *Santibanez-Sanchez v. Garland*, No. 21-60958, 2024 WL 4471737, at \*2 (5th Cir. Oct. 11, 2024) (per curiam). But the key here is that we owe some deference, and because under any level of deference Ceniceros cannot establish that Adela will suffer an exceptional and extremely unusual hardship, we decline to resolve the question.

Ceniceros's brief is not a model of clarity, but we read it to raise three challenges to the IJ's denial of his petition for cancellation of removal.

**A.**

Ceniceros first argues either, we cannot rely on the BIA's decision in *Monreal-Aguinaga* and its rule for how to determine whether a hardship is exceptional and extremely unusual, or the IJ erred by failing to apply the standard correctly because he did not consider the evidence in the aggregate. Neither argument has merit.

Ceniceros claims *Monreal-Aguinaga* is "internally inconsistent" and the hardship standard should be read "more liberal[ly]." Petitioner Br. at 9 (citing 23 I. & N. Dec. at 60–62). On his view, the decision "begs a lot of questions" because it relies on "decidedly usual" factors like age and health to explain an unusual hardship. *Id.* at 15–17 (internal quotation marks omitted).

We have twice rejected this exact argument and do so again. The first time was based on "'substantial deference' to the BIA's interpretation of the immigration statutes and accompanying regulations." *Saavedra v. Garland*, No. 23-3157, 2023 WL 8651265, at \*4 (6th Cir. Dec. 14, 2023) (quoting *Lin v. Garland*, 81 F.4th 629, 633 (6th Cir. 2023)). But after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) clarified that courts have an independent obligation to determine the meaning of statutory terms, we interpreted "exceptional and extremely unusual"

8

de novo. *Moctezuma-Reyes v. Garland*, 124 F.4th at 420–23. In so doing, we again rejected an argument that "*Monreal* [wa]s incorrect and that a more liberal, subjective standard should govern." *Id.* at 423. Instead, we concluded that *Monreal-Aguinaga* "squares with the best reading of the statute." *Id.* It's logical to review many factors when determining whether an alien's deportation causes a hardship. Though those factors may be unusual or unremarkable on their own, depending on the facts of the alien's case and how those factors aggregate, the hardship experienced by the qualifying relative may still be exceptional and extremely unusual. That is, "[d]ifferences in degree can be differences in kind." *Id.* So we apply *Monreal-Aguinaga* as construed by *Moctezuma-Reyes*.

And for the same reason, Ceniceros's alternative theory that the IJ needed to give a "very detailed review" of why the identified hardships didn't rise to the statutory standard also does not move us. Petitioner Br. at 13, 21–22. *Monreal-Aguinaga* and *Moctezuma-Reyes* make plain that the IJ's burden is to review the facts in the aggregate to determine whether a hardship is exceptional and extremely unusual. 23 I. & N. Dec. at 63; 124 F.4th at 423–24. That's what the IJ did.

In a thorough oral opinion the IJ considered Ceniceros's evidence in support of his hardship claim. The IJ first identified the breadth of the medical hardship—Ceniceros's role helping Adela get her medications, taking her to primary care appointments, providing translation services, and advising Adela on renewing prescriptions. The IJ then identified the breadth of the financial hardship—Ceniceros's role in covering his mother's expenses, including rent, utilities, and groceries. Finally, the IJ identified the breadth of the emotional hardship—filling much of the void left after his father's death.

But the IJ also found that even after crediting these experiences, Ceniceros had not met the high bar imposed by Congress. Again, he went through each hardship to explain why. First, he

found that any medical hardship could be mitigated—Ceniceros's brother lives in the same house, has similar flexibility, and a driver's license, so he could take Adela to her appointments, pick up prescriptions, or run her errands. He also found that the financial hardship would be mitigated because though Adela has not historically worked, nothing in the record suggested she was incapable of working. And as for Ceniceros's role as emotional caregiver, the IJ found that the fact that Adela is surrounded by nearby family would make this hardship more manageable. Others live in the same household who could "step in to provide the assistance" Ceniceros had been, even if "not with the same level of emotional commitment." A.R. at 47–48.

The IJ's analysis makes clear that he contemplated Ceniceros's evidence in the aggregate. As he summarized:

> the ties that [Ceniceros's] brother has and that others in the household have, are family ties which in respondent's culture are important ties to bind families together. Will it be as seamless and easy as it is now? Hardly. Will there be financial hardship when respondent's $600 or so per month are not there? Probably. Will it be to a point of destitution or inability to get medical care? Not on this record. The mother will be able to survive with the help of the other family members who are there just not required now to provide that assistance.

*Id.* at 48. The IJ's analysis was comprehensive and analytically precise. No error occurred.

**B.**

Ceniceros finally claims that the IJ "ignored material evidence" in rendering his decision. In so doing, Ceniceros claims this case is like *Champion v. Holder*, 626 F.3d 952 (7th Cir. 2010). There, the IJ "failed to consider evidence that was presented during the alien's removal proceedings." Petitioner Br. at 23–24. Ceniceros argues that the IJ did not consider first, that his brother has three kids, has limited English proficiency, and couldn't care for his mother; second, the country conditions in Mexico; and finally, how Ceniceros has improved his—and by extension Adela's—economic circumstances since 2002.

10

None of these arguments has merit. First, as we explained above, the IJ expressly contemplated Ceniceros's brother's circumstances—that he lives in the same house and works at the same company, so can run errands and drive Adela to her appointments. Nothing Ceniceros points to compels a conclusion to the contrary.

As for the country conditions in Mexico, the IJ could have reasonably concluded this factor was not relevant. Country conditions are relevant to the exceptional-and-extremely-unusual-hardship inquiry "only insofar as they may affect a qualifying relative." *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64. He offered no evidence that the conditions in Mexico would result in hardship to Adela. And insofar as Ceniceros tries to add new facts to the record about the limited economic opportunity in Mexico, those are beyond the scope of our appellate review.

Lastly, as discussed, the IJ did address Ceniceros's role in providing for Adela financially. But the IJ determined that the lost income could be mitigated by Adela since she is capable of working. As well, because she is surrounded by other family who can step in to help, the loss of Ceniceros's income would not rise to "destitution," and so did not constitute an exceptional and extremely unusual hardship. A.R. at 48. The IJ adequately addressed the financial hardship that Ceniceros's removal will cause.

For all of these reasons, we **DENY** the petition for relief.