RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BASSIL MATI YOUSIF,

                                    *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

                                    *Respondent*.

> No. 22-3178

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 078 570 659.

Decided and Filed: November 16, 2022

Before: SILER, NALBANDIAN, and READLER, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Russell Reid Abrutyn, ABRUTYN LAW PLLC, Berkley, Michigan, for Petitioner. Robert P. Coleman III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. Bassil Mati Yousif challenges a Board of Immigration Appeals ("BIA") decision denying his application for deferral of removal and his motion to remand to consider new evidence. Because substantial evidence supports the BIA's denial of his application, and because the BIA acted within its discretion in denying Yousif's motion to remand, we deny Yousif's petition for review.

## I.

Yousif is a native and citizen of Iraq who came to the United States in 2000 as a refugee. In 2002, he became a lawful permanent resident. In 2010, he was convicted of two counts of conspiracy to distribute 100 kilograms or more of marijuana in violation of federal law.

In 2011, the Department of Homeland Security served Yousif with a Notice to Appear in immigration court, explaining that, because of his conviction, he was removable. Yousif applied for withholding of removal under the Convention Against Torture ("CAT"), withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA"), and, in the alternative, deferral of removal under 8 C.F.R. § 1208.17(a). He argued that if he returned to Iraq, he would be persecuted because of his religious beliefs. After a December 2011 hearing, an Immigration Judge ("IJ") denied his application and ordered him removed.

Yousif did not appeal that decision. Instead, in 2017, he moved to reopen his application based on changed conditions in Iraq, alleging he would face torture because of "his Christian religion, long residence in the U.S. [and] . . . his ethnicity." (A.R. 001412.) At first, an IJ denied his application, but Yousif moved to reconsider, and the IJ reopened the case to determine whether Yousif was eligible for deferral of removal under CAT.

Then came Yousif's 2018 hearing. Only Yousif testified. When asked if there is "anyone specific" whom he feared in the Iraqi government, he responded: "No, there isn't anybody in particular but Iraq is no longer my country. I have removed it from my head." (Hr. Tr. 41:6–8, A.R. 000668.) And when asked if there was "anyone else" he feared, he replied: "[A]ll Muslims." (Hr. Tr. 41:11–25, A.R. 000668.) The IJ admitted many of Yousif's proffered documents into evidence, including Department of State reports, internet articles, and other government documents. The IJ also admitted declarations from Daniel Smith, a researcher and journalist who lives in Iraq; Rebecca Heller, the director of the International Refugee Assistance Project; and Mark Lattimer, an NGO director. Yousif's counsel "request[ed] the [IJ] consider [Mr. Smith] a percipient witness" instead of an expert witness, and the IJ agreed to do so. (Hr. Tr. 18:4–15, A.R. 000645.) And, "consistent with the [IJ's] prior rulings," he declined to consider Ms. Heller as "an expert[] in country conditions." (Hr. Tr. 21:2–9, A.R. 000648.)

The IJ admitted the declaration of Mark Lattimer as an expert.  The government contradicted the testimony of these witnesses with expert witnesses—Denise Natali, Michael Rubin, and Douglas Ollivant—reports, and articles.

In the end, the IJ found the government's evidence "more persuasive," and held that "[b]ased on an evaluation of the totality of the evidentiary record," Yousif had not "met his burden to prove that it is more likely than not that he will be subject to torture in Iraq." (IJ Order, A.R. 000623–24.)  The IJ also found that Yousif did not meet his burden to show, "as the Sixth Circuit requires . . . a 'particularized threat of torture.'"  (IJ Order, A.R. 000623.)

Yousif appealed, arguing that the IJ erred by giving the government's experts' testimony more weight than his witnesses and finding that he had not met his burden to establish it is more likely than not that he'd be tortured.  He also argued that the IJ improperly relied on *Matter of J-F-F-*, 23 I. & N. Dec. 912 (A.G. 2006), a decision by the Attorney General, which says that when a noncitizen presents evidence of a risk of torture as a chain of events, all events in the chain must be more likely than not to occur (causal-chain approach).  In other words, he claimed that the IJ did not assess his probability of torture from all entities and for all reasons in the aggregate (aggregate approach), and instead incorrectly assessed his probability of torture as a hypothetical chain of events per *J-F-F-*, and was wrong to do so.  Finally, Yousif argued that his case should be remanded so the IJ can consider new country-conditions evidence.  Yousif submitted updated declarations, reports, articles, and recent BIA and IJ decisions in support of his motion to remand.

The BIA adopted the IJ's decision, dismissed the appeal, and denied Yousif's motion to remand.  The BIA affirmed the IJ's determination that Yousif had not met his burden to establish that it's more likely than not that he'd be tortured and found that the IJ's weighing of the evidence was permissible.  The BIA also found that the IJ did not rely on the causal-chain approach and instead correctly applied the aggregate approach.  The BIA then denied Yousif's motion to remand because he did not meet his burden to prove that the "newly submitted evidence would likely change the result of his case." (BIA Order, A.R. 000005.)  The evidence was "cumulative" of the evidence submitted before the IJ and did not establish that Yousif would "be singled out for torture . . . ." (BIA Order, A.R. 000005.)

Yousif now petitions our court for review of the denial of his application and motion to remand. Where, as here, the BIA issued its own opinion but also adopted the immigration judge's reasoning, we review both decisions. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

**II.**

A. Factual Challenges

We first consider Yousif's factual challenges to the denial of his application for deferral of removal under CAT. Yousif argues that he met his burden to prove it is "more likely than not" that he would be tortured "by . . . or with the consent or acquiescence of" Iraqi government officials "acting in an official capacity" because of his status as a Chaldean Christian, his ties to the United States and lack of ties to Iraq, his refugee status, and his criminal history. *See* 8 C.F.R. §§ 1208.17(a), 1208.18(a)(1).

Our review of Yousif's factual challenges is "highly deferential." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). We use the substantial evidence standard and treat "[t]he agency's findings of fact a[s] conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." *Id.* (emphasis added) (citation and quotation marks omitted). This means that "[w]hen the evidence could reasonably point in either direction . . . we must defer to the agency's choice." *Shafo v. Wilkinson*, 844 F. App'x 791, 796 (6th Cir. 2021) (citing *Al-Koorwi v. Barr*, 837 F. App'x 323, 327–28 (6th Cir. 2020)).

Substantial evidence supports the BIA's conclusion that it's not more likely than not that Yousif will face torture upon removal to Iraq. Much of the evidence Yousif presents only establishes generalized violence and political unrest in Iraq. And more specific evidence about violence committed at the hands of ISIS is "outdated." (Natali Dec., A.R. 000737.) To be sure, there are post-ISIS-liberation challenges for religious minorities. Some are returning home to property disputes or destruction, extortion, and threats. And while reports show the "existence of discrimination [and] harassment against Christians in some regions in Iraq," this "would not amount to torture." (BIA Order, A.R. 000004.); *see Suleiman v. Garland*, 849 F. App'x 587, 589

(6th Cir. 2021) (finding the same); *Abdulahad v. Barr*, 838 F. App'x 126, 136 (6th Cir. 2020) (same).

The record also makes clear that Iraqi security forces' primary goal is to obstruct the efforts of ISIS. Popular Mobilization Forces or Units ("PMF") exist for the same purpose. Yousif's two decades in the United States would make him less likely to be suspected of ISIS affiliation. Because of this focus on counterterrorism, one expert testified that the idea that the government will be interested in detaining returning Iraqis for long periods of time upon reentry, much less harming them, was "farfetched." (Natali Dec., A.R. 000733.) Even for returning Iraqis with criminal histories. And Ollivant opined: "I know of no incidents of Iraqi citizens being tortured for not having proper documents" upon arrival. (Ollivant Dec., A.R. 000789.) Any screening Yousif might face at various checkpoints throughout the country would have the same primary goal: ensure that there is a "legitimate purpose" to Yousif's travel and that he is "not a terrorist seeking to infiltrate a community . . . ." (Rubin Dec., A.R. 000786.) And two government experts emphasized that Western influences are not unwelcome or uncommon in Iraq.

The IJ also found that there's insufficient evidence to show that the Iraqi government acquiesces or willingly turns a blind eye to crimes committed by PMF members or any extremist groups. To the contrary, record evidence shows that the Iraqi government has committed to investigating and punishing PMF members who've committed human rights abuses rather than consenting to or condoning them.

Although Yousif might have challenges integrating into society, especially without family in the country, there's record evidence that Yousif could safely relocate. "[T]housands of Christians and Yezidi have returned uneventfully to rebuild their homes, and their villages and towns are often protected by Christian and Yezidi militias, as well as PM[F]s and Iraqi forces." (Natali Dec., A.R. 000735.)

The bottom line is that there is substantial evidence to support the decisions below. "It is not enough for [Yousif] to identify evidence that '*supports*' [his] desired factual finding;

[he] must identify evidence that '*compels*' that finding." *Shafo*, 844 F. App'x at 796 (citation omitted). He cannot do so.

## B. Legal Challenges

We next turn to Yousif's two legal challenges. First, he argues that "the IJ and BIA failed to consider the aggregate risk of torture" when assessing his probability of torture in Iraq. (Reply Br. at 3.) And next, although his brief isn't entirely clear, Yousif appears to raise an "alternative but related argument" that the IJ and BIA misapplied the *Matter of J-F-F-* "causal-chain" approach and perhaps erred in applying that standard in the first place. (Reply Br. at n.2; Pet. Br. at 15.)

Take his aggregation argument first. In this circuit, we have not held that the BIA *must* apply the aggregate approach, and we need not make that decision today because the BIA did an aggregate analysis. *See Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020) (presuming in that case that the aggregate approach applies).[1] As in *Marqus* and *Solaka*, the IJ (as adopted by the BIA) concluded that "there is insufficient evidence on this record that the Iraqi government will seek to torture [Yousif] or that the government will acquiesce in his torture, including being willfully blind to such action." (IJ Order, A.R. 000623.); *see Solaka v. Wilkinson*, 844 F. App'x 797, 800 (6th Cir. 2021) (finding that the BIA applied the aggregate approach when it used similar language); *Marqus*, 968 F.3d at 589–90 (same). The IJ also found that Yousif "has not met his burden to prove that it is more likely than not that he will be subject to torture in Iraq, based on his religion, his residence in the United States, his lack of ties to Iraq, or any other basis." (IJ Order, A.R. 000623.) And the BIA explicitly noted that Yousif's claim "must be considered in terms of the aggregate risk of torture[,]" and that the IJ applied that approach. (BIA Order, A.R. 000004.) (citation and quotation marks omitted.) Thus, this argument fails.

---

[1]Some of our sister circuits have found that 8 C.F.R. § 1208.16(c)(3)'s mandate to consider "all evidence relevant to the possibility of future torture" requires the BIA and IJ to apply the aggregate approach when there's a possibility of torture from multiple entities or for multiple reasons. *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972–73 (4th Cir. 2019); *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015); *Kamara v. Att'y Gen.*, 420 F.3d 202, 213–14 (3d Cir. 2005).

Next we look at the causal-chain approach that the Attorney General articulated in *Matter of J-F-F-*. To the extent that Yousif challenges the use of the causal-chain approach at all, we have never held that the approach is inappropriate as a legal matter. See *Al-Koorwi*, 837 F. App'x at 330–31 (upholding BIA decision that used *Matter of J-F-F-*); *Shakkuri v. Barr*, 780 F. App'x 286, 292–93 (6th Cir. 2019) (same); *see also Marqus*, 968 F.3d at 590 (did not reject causal-chain approach).[2] More fundamentally, the IJ did not cite *Matter of J-F-F-*. So, unsurprisingly, the BIA concluded that the IJ did not rely on that standard. Instead, the BIA notes that the IJ "based his decision on [Yousif's] failure to show that [he] faces a particularized threat of torture based on the aggregate risk from all potential sources." (BIA Order, A.R. 000005.) We agree; there's no misplaced reliance on *Matter of J-F-F-* or the causal-chain approach generally.[3]

## C. Motion to Remand

Yousif challenges the BIA's denial of his motion to remand to consider new evidence. He argues that his new evidence "reflects a significant worsening of longstanding sectarian and politically-motivated violence," and that the BIA abused its discretion by denying his motion. (Pet. Br. at 25.)

---

[2]The 9th Circuit recently articulated when, in its view, it's appropriate to use *Matter of J-F-F-*. *See Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1155 (9th Cir. 2022) (*Matter of J-F-F-* is appropriate in two situations: (1) when a noncitizen "posits a *single theory* for why he would be tortured, but the torture will come about only if several hypothetical events all occur in sequence," or (2) when a noncitizen "posits multiple theories for why he might be tortured, but one or more of those theories entails a hypothetical chain of events occurring in sequence. In [the latter] case, the rule articulated in *J-F-F-* will often be of little practical help to the Agency. [This is because] [e]ven if the Agency were to determine that the applicant did not carry his CAT burden on the basis of any one theory . . . [the Agency] would still have to assess whether the applicant's *aggregate* risk of torture—considering all theories collectively—entitled him to CAT relief.")

[3]To the extent that Yousif argues that the BIA and IJ were *required* to apply the causal-chain standard and did not, we note that he failed to raise this with the BIA, and in fact argued the opposite to the BIA. We need not decide whether this argument is exhausted because it would fail on the merits. *Solaka*, 844 F. App'x at 800–01. It would fail on the merits because any application of *Matter of J-F-F-* "was not necessary to . . . deny relief." *Marqus*, 968 F.3d at 590. As we just noted, Yousif "did not demonstrate a threat of torture personal to him from either the Iraqi government[,] . . . the PMF, [or any potential source] regardless of how he might come into contact with each." *Id.*

We begin with a bit of context. "The Board may deny a motion to remand where the evidence . . . is not material or probative[.]" *Section 5.8, Motions to Remand*, **BIA Practice Manual** (last updated August 15, 2022), https://www.justice.gov/eoir/reference-materials/bia/chapter-5/8; *see also* 8 C.F.R. § 1003.2(c). Or put another way, the BIA can deny the motion when the new evidence offered is not "'likely [to] change the result in the case.'" *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 321 (6th Cir. 2018); *see also Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992).

We review the BIA's decision for an abuse of discretion. *Ishac v. Barr*, 775 F. App'x 782, 789 (6th Cir. 2019). "The BIA abuses its discretion if its decision was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination.'" *Id.* (quoting *Ahmed v. Mukasey*, 519 F.3d 579, 585 (6th Cir. 2008)). The BIA also abuses its discretion when it does not consider the petitioner's proffered evidence and "'articulate' the basis for its decision" so as to inhibit "meaningful review by an appellate court." *Akrawi v. Garland*, No. 19-3896, 2022 WL 3681260, at *7 (6th Cir. Aug. 25, 2022) (quoting *Marqus*, 968 F.3d at 592).

With this context in mind and the record before us, we find that the BIA did not exceed its discretion. The BIA explained why the new evidence did not support a remand. The BIA found two defects with Yousif's new evidence. First, the new evidence is "cumulative" of the evidence already presented in the record. (BIA Order, A.R. 000005.) The BIA found that the new evidence "shows that there continues to be ongoing sectarian strife and violence in Iraq, Christian communities continue to face difficulties in Iraq, and that abuses have been committed by Iraqi security forces and militias." (BIA Order, A.R. 000005.)

More specifically, Christians could face harassment and discrimination. (*Compare* International Religious Freedom Report for 2020, A.R. 000027–28 (report included in motion to remand describing incidents of harassment), *with* International Religious Freedom Report for 2016, A.R. 001103–10 (report included in original application describing the same).) Some PMF members act with impunity. (*Compare* 2020 State Department Country Report, A.R. 000045 (report included in motion to remand finding that PMF members act with impunity), *with* Lattimer 2017 Dec., A.R. 000326 (declaration included in original application describing the

same).) And anti-American sentiment exists. (*Compare* Smith 2020 Dec., A.R. 000101–02 (declaration included in motion to remand describing risks to those with U.S. ties), *with* Heller 2017 Dec., A.R. 001064–66 (declaration included in original application describing the same).) So none of this is materially different from the evidence that Yousif presented before.

Second, the BIA concluded that the new evidence does not cure a fundamental problem with Yousif's application: He needs to prove a "particularized threat of torture" with the consent of the Iraqi government, and he has not. (BIA Order, A.R. 000005.) At Yousif's 2018 hearing, he "acknowledged that there was no one in particular that he feared in Iraq, but rather that he felt that Iraq was no longer 'his' country." (BIA Order, A.R. 000006.) He later testified that he fears "all Muslims." (Hr. Tr. 41:11–25, A.R. 000668.) Yousif's expressed fears of various security forces in his briefing does not establish a particularized threat. And Yousif's new, proffered declarations and reports, even if taken at face value, do not show that it is "more likely than not" that Yousif himself would be tortured within the meaning of CAT. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1156 (6th Cir. 2010); *see Jado v. Wilkinson,* 847 F. App'x. 278, 285─287 (6th Cir. 2021). Because the BIA provided a reasoned explanation for the denial of Yousif's motion to remand, it did not abuse its discretion.

Yousif makes a few arguments in response to the BIA's denial, but they don't move the needle. First, Yousif argues that cumulative evidence can be material. On our read of the record, the best evidence to support this argument is evidence showing a potential "uptick" in anti-American sentiment as a result of increased political hostility between Iran and the United States. (Smith 2020 Dec., A.R. 000108.) But "incremental changes" in "volatile atmosphere[s]" do not show materially changed country conditions. *Jado*, 847 F. App'x. at 285 (quotation marks omitted). And while it might be true that in some cases cumulative evidence meets the materiality threshold, it cannot where, as here, it does not establish a particularized threat of torture. *See id.* at 285–86 (noting that evidence of an "escalation of human rights violations" or

an increase in "anti-American sentiment . . . does not show that such conditions would specifically affect" a petitioner) (quotation marks omitted)).[4]

Next, Yousif argues that the BIA failed to give the appropriate weight to certain reports. We've recognized that the "BIA abuse[s] its discretion" when "it neither name[s] the new evidence nor articulate[s] why the new evidence was insufficient." *Akrawi*, 2022 WL 3681260, at *8 (citing *Marqus*, 968 F.3d at 593); *Ishac*, 775 F. App'x at 793. By contrast, here, the BIA cited the many reports Yousif submitted and, as discussed above, articulated why the evidence was insufficient (i.e., it's cumulative and doesn't establish a particularized threat). (BIA Order, A.R. 000005 (citing Respondent's Motion to Reopen at Tabs A, C; First Supplement to Respondent's Br. at Tab A; Second Supplement to Respondent's Br. at Tab A).) So the issue in *Marqus* and *Ishac* is not a problem here. And to the extent Yousif argues that the BIA should have given more weight to the 2017 State Department Reports in particular, we've recently said that those reports do not "undermine the rationality of the BIA's reason for denying remand." *Akrawi*, 2022 WL 3681260, at *8.[5]

Finally, Yousif argues that it was arbitrary and capricious for the BIA to deny him relief when the BIA or IJ granted relief in fifteen "[i]dentical" cases. (Pet. Br. at 43; *see* Pet. Br. Addendum; Reply Br. Addendum; A.R. 000242.) We disagree. We first note, as the BIA did, that the decisions Yousif cites "have no precedential value" and therefore are not binding on the BIA. (BIA Order, A.R. 000006.); *see* 8 C.F.R. § 1003.1(g); *Jomaa v. United States*, 940 F.3d 291, 298 (6th Cir. 2019) (noting that the BIA accords no precedential value to its unreported decisions).

---

[4]Yousif also argues that the BIA "erroneous[ly] interpret[ed] [] the law" because the law "requires the evidence to be material, not the change in country conditions." (Pet. Br. at 27.) This is a distinction without a difference. Here, the evidence presented is evidence of country conditions. The evidence—of changed conditions—must be material. And it isn't.

[5]The court in *Kada* found certain 2017 reports to be persuasive. *See Kada v. Barr*, 946 F.3d 960, 967–68 (6th Cir. 2020). However, the reports were just one of many reasons why the *Kada* court remanded. To name two, Kada presented evidence that his counsel was ineffective, and the BIA applied the ineffective assistance of counsel standard improperly. *See id.* at 965–66. That is not the case here. And we have never held that certain country-conditions reports, on their own, warrant relief. This is because each noncitizen must establish a particularized threat to him or her, and reports, on their own, don't get them over the line. *See Cruz-Samayoa*, 607 F.3d at 1156.

To be sure, the BIA can be arbitrary and capricious if it applies the wrong legal standard to the facts before it or fails to explain "inconsistent outcomes" that aren't "readily apparent." *Ishac*, 775 F. App'x at 788–89.  For example, three of the ten decisions included in Yousif's motion to remand involve the BIA remanding to an IJ who either applied a standard incorrectly or didn't provide sufficient analysis to allow for BIA review.  Our job when reviewing the BIA's work is the same.  Here, the BIA applied the correct standard on appeal, namely: Whether the evidence before it was material.  And it did not remand to the IJ to reconsider the expert status of Smith or Heller, like some of the other decisions that Yousif put before the BIA did, because Yousif "waived" any argument that Smith should be considered an expert, (BIA Order A.R. 000005–06 n.2.), and the IJ said on the record that considering Heller a percipient witness was "consistent with [his] prior rulings."  (Hr. Tr. 20:19–21:11, A.R. 000648.)  So the reasons for the different outcomes are readily apparent.**6**  And the five decisions that were only presented in Yousif's briefing to this Court "cannot constitute a basis for reversing the [BIA's or] IJ's decision."  *Abdulahad*, 838 F. App'x at 134; *see Akrawi*, 2022 WL 3681260, at \*6.  For these reasons, the BIA was not arbitrary and capricious.

### D.  "Particularly Serious Crime" Standard

Lastly, Yousif challenges a decade-old order that found him ineligible for *withholding* of removal relief because of his drug conspiracy conviction.  He argues that we should remand to allow the BIA to consider the impact of *Matter of B-Z-R-*, 28 I. & N. Dec. 563 (A.G. 2022).

For at least two reasons, we will not.  First, *Matter of B-Z-R-* held that "immigration adjudicators may consider a respondent's mental health in determining whether a respondent, 'having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.'"  28 I. & N. Dec. at 567 (quoting 8 U.S.C. § 1158(b)(2)(A)(ii)).  Yousif does not allege any mental health issues.  And nothing in *Matter of B-Z-R-* suggests it would apply retroactively.  Second, Yousif conceded that he was ineligible for withholding of removal, so he waived a general argument that, notwithstanding *Matter of B-Z-R-,* the "particularly serious crime" standard was misapplied.  (Respondent's Mot. to

---

**6**Another one of Yousif's cited cases involved a different form of relief.

Reconsider, A.R. 001377  ("Respondent concedes that he has been convicted of a 'particularly serious crime' and as such is only eligible for deferral of removal [under CAT]."); Hr. Tr. 12:18–13:8, A.R. 000639–40 (Yousif's lawyer again stipulated that Yousif is "only eligible for deferral under [CAT] . . . [which] has basically limited [the court's] purpose to that form of relief.").) We decline to hear this argument.

## III.

For these reasons, we deny Yousif's petition for review.