NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0087n.06

Nos. 23-3047/3445

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 29, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| RAED ZAKARIYA, aka ROBERT JAMEEL BARBAR, | ) ) ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| MERRICK B. GARLAND, Attorney General, | ) ) ) | OPINION |
| Respondent. | ) | |

Before: GILMAN, McKEAGUE, and THAPAR, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Raed Zakariya, also known as Robert Jameel Barbar, seeks review of decisions by the Board of Immigration Appeals (BIA) that denied (1) his application for withholding of removal under the Immigration and Nationality Act (INA) and protection under the Convention Against Torture (CAT), and (2) his motion to reopen those proceedings. For the reasons set forth below, we **DENY** Zakariya's petition for review.

## I. BACKGROUND

In May 2015, Zakariya, a native of Iraq, applied for admission to the United States without a valid entry document. The Department of Homeland Security served him with a Notice to Appear a few weeks later, charging him with inadmissibility under the INA. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Appearing with counsel before an immigration judge (IJ) in June 2015, Zakariya admitted the factual allegations set forth in the Notice To Appear, conceded removability as charged, and applied for asylum, withholding of removal, and protection under the CAT.

Two months later, Zakariya admitted that he had obtained legal immigration status in Germany 15 years before and had failed to disclose that information in his application for asylum and related relief. The IJ consequently deemed Zakariya's application abandoned, ordered him removed to Germany, and informed him that he could apply for relief from removal to Iraq if Germany refused to accept him. Zakariya later pleaded guilty to false swearing in an immigration matter, in violation of 18 U.S.C. § 1546.

In March 2018, after Germany denied Zakariya a visa and the United States government sought to remove him to Iraq, Zakariya moved to reopen his case to apply for withholding of removal and protection under the CAT. He also moved to change venue to Detroit, Michigan. The IJ granted both motions.

In June 2019, Zakariya testified at a merits hearing that he believed "Islamic militias, with the help of the [Iraqi] government," would harm him because he is a Chaldean Christian. He conceded that he "left [a] long time ago so [he] really [did not] know what's going on" in Iraq and, when asked further questions by the IJ, he stated that his source of information about the militias was "the internet and Facebook" as well as "famil[y] and friends." But Zakariya also explained that his entire family had fled Iraq because, among other reasons, (1) his brother's property had been seized, (2) his brother-in-law had been kidnapped by Islamic militias at one point, and (3) his sister "was fearful for her life" in Iraq and had been "moving from one place to another until she . . . managed to leave the country."

In addition to his testimony, Zakariya submitted country-conditions evidence regarding the treatment of Chaldean Christians in Iraq, including a declaration by proposed expert Daniel Smith. The government submitted its own evidence, including three proposed declarations by expert

witnesses, and objected to qualifying Smith as an expert witness. Agreeing with the government, the IJ declined to treat Smith as an expert for the following reasons:

> Mr. Smith has testified twice in this court. The most recent time he actually disclosed his educational credentials and[,] based on the absence of any rigorous educational credentials that would allow him to opine on such important issues as country conditions[,] which generally require the application of some academic standards, I have not admitted him as an expert and I will not here. I will admit him as a percipient witness because he has lived in Iraq for quite some time and his factual observations are helpful to the [c]ourt. But his conclusions, I do not find him qualified to make.

The IJ issued a written decision in September 2018 that denied Zakariya's application for withholding of removal and CAT protection. Despite noting that Zakariya had previously filed a false asylum application, the IJ found him credible because he "was candid and forthcoming in admitting information that undermined his claims for relief." The IJ nevertheless denied withholding of removal because Zakariya had not shown a clear probability of future persecution on account of his religion. Similarly, the IJ denied CAT protection because Zakariya had not shown that (1) he was more likely than not to be tortured upon his return to Iraq, or (2) the Iraqi government "acquiesce[s] to or turn[s] a blind eye to torture of Christians."

Zakariya appealed the IJ's decision to the BIA, raising only the argument that the IJ erred in failing to deem Smith an expert witness. The BIA adopted and affirmed the IJ's denial and "wr[ote] separately solely to address issues raised on appeal." Citing an IJ's "broad discretion to admit and consider relevant and probative evidence as well as to assign evidentiary weight to evidence," the BIA determined that the IJ's decision not to qualify Smith as an expert "because [Smith] did not submit his education credentials in his curriculum vitae ('CV') with his declaration" was permissible. This timely petition for review followed.

While his appeal was pending, Zakariya filed a timely motion to reopen and to reconsider with the BIA. He argued that the BIA should (1) reopen his case based on changed country conditions in Iraq, and (2) reconsider its summary affirmance of the IJ's denial of relief because the IJ had failed to address certain country-conditions evidence that Zakariya had submitted. The BIA denied Zakariya's motion to reopen because his newly submitted evidence "does not demonstrate materially changed conditions, but rather a continuation of earlier conditions already established in the record." It also concluded that Zakariya had not established prima facie eligibility for the relief sought because "he [has] not shown a reasonable likelihood that he can establish a particularized risk of torture in Iraq," and that recent decisions by IJs who have granted CAT protection to similarly situated applicants "carr[y] no precedential weight, and [] do not dictate the outcome of [Zakariya]'s motion." As for the motion to reconsider, the BIA deemed Zakariya's arguments waived because he had failed to raise them on direct appeal.

Zakariya filed a timely petition for review, challenging only the denial of his motion to reopen. The case was consolidated with his petition for review of the BIA's summary affirmance of the IJ's decision.

## II. ANALYSIS

### A.     Standard of review

"Where, as here, the Board adopts the Immigration Judge's reasoning, but adds its own comments, we review both the Immigration Judge's decision and the Board's additional remarks." *Ward v. Holder*, 733 F.3d 601, 603 (6th Cir. 2013). We review questions of law de novo, *Marqus v. Barr*, 968 F.3d 583, 590 (6th Cir. 2020), and the IJ's and the BIA's factual findings under the substantial-evidence standard. *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019). Such findings "may be reversed only if the evidence 'not only supports a contrary conclusion, but indeed *compels*

it.'" *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014) (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004)) (emphasis in original).

"We review the denial of a motion to reopen under the abuse-of-discretion standard." *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009). The BIA abuses its discretion if its denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citation omitted).

**B.      Ruling on Smith as an expert witness**

On appeal to this court, Zakariya argues that the BIA erred in affirming the IJ's decision not to qualify Daniel Smith as an expert witness. The government correctly points out that an IJ's refusal to qualify a proposed expert witness warrants remand only if it constitutes a due process violation. *Solaka v. Wilkinson*, 844 F. App'x 797, 800 (6th Cir. 2021); *see also Marqus*, 968 F.3d at 590–91 ("Whether the BIA denied [the petitioner] due process when it affirmed the IJ's decision not to admit [an] expert declaration on country conditions in Iraq is a question of law that we review de novo."). "[R]eviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the petitioner was prejudiced because of it." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016).

Zakariya relies on *Makdesion v. Garland*, No. 22-3436, 2023 WL 2972548 (6th Cir. Apr. 17, 2023), in which this court "remand[ed] to the BIA with instructions to explain its apparently inconsistent treatment of Daniel Smith as an expert." *Id.* at *4. The IJ in *Makdesion* had provided no explanation for declining to qualify Smith as an expert, and the BIA expressly stated its uncertainty as to whether there was "some distinction between Smith's qualifications in [*Makdesion*] and what may have been presented in other cases." *Id.* at *1, 4.

Here, the IJ explained that he declined to qualify Smith because, based on the information that Smith had disclosed in his testimony in other cases, the IJ did not believe that Smith had "any rigorous educational credentials that would allow him to opine on such important issues as country conditions[,] which generally require the application of some academic standards." On appeal, the BIA affirmed the IJ's decision on the basis that it discerned "no clear error in the [IJ]'s finding that Daniel Smith's CV does not demonstrate the requisite level of expertise to qualify him as an expert."

But the government did not provide—and we could not find—any legal support for a bright-line rule that only an academic degree can qualify an individual to serve as an expert about the treatment of minority groups in a certain country at a specific point in time. *Cf. Matter of D-R-*, 25 I. & N. Dec. 445, 459–60 (B.I.A. 2011) (holding that a witness was "clearly qualified to testify as an expert on military operations during the Bosnian War" based on his work experience, even though nothing in the record indicated that the witness had an academic degree in a relevant field). We need not, however, decide whether the IJ erred in refusing to qualify Smith as an expert witness because, even if that were the case, Zakariya's due-process claim fails for lack of prejudice.

To establish prejudice, a noncitizen must show that "the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008). Zakariya contends that the IJ's failure to qualify Smith as an expert witness was prejudicial because Smith's "well-sourced and extensively detailed reports . . . establish [Zakariya's] eligibility for withholding of removal under the INA and the CAT." The IJ, however, did not exclude Smith's declaration and reports. Instead, the IJ stated that he "ha[d] considered the expert declarations submitted by both parties" and found the government's expert declarations "more substantively persuasive" because they

were "more strongly corroborated by available country reports." Zakariya fails to explain how treating Smith's declaration as that of an expert witness would have changed the IJ's conclusion that the country-conditions reports were more consistent with the declarations of the government's experts.

This court's decision in *Solaka v. Wilkinson*, 844 F. App'x 797 (6th Cir. 2021), is particularly instructive. In that case, this court held that a petitioner "[could not] meet his burden of showing that treating Smith"—the same Daniel Smith at issue in this case—"as [an] expert[] would have changed the outcome" because (1) the IJ "determined that the government's declarations better comported with the recent State Department reports than [the petitioner]'s declarations," and (2) the petitioner "[did] not explain how treating . . . Smith as [an] expert[] instead of [as a] fact witness[] would have affected his case." *Id*. at 800.

The IJ here similarly concluded that the country-conditions reports better supported the government's expert declarations and, other than his assertion that Smith's reports established his eligibility for the relief sought, Zakariya has not explained how qualifying Smith as an expert witness would have affected that conclusion. To the extent that Zakariya contends that the IJ should have given more weight to Smith's declarations, we generally defer to the IJ's weighing of the evidence. *See Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020) ("Because [the petitioner]'s arguments merely ask us to reweigh the evidence, and the Government has introduced its own credible body of evidence to the contrary, we defer to the IJ's factual findings on this record.") As a result, we deny Zakariya's petition for review on this point.

C.     **Withholding of removal**

In his brief on appeal, Zakariya also challenges the IJ's denial of the withholding-of-removal claim. The government responds by arguing that we should decline to

review Zakariya's withholding-of-removal argument because he did not raise it on appeal to the BIA and therefore failed to exhaust it. We agree.

Courts "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The Supreme Court recently held that this exhaustion requirement is not jurisdictional, but instead a claim-processing rule subject to waiver and forfeiture. *Santos-Zacaria v. Garland*, 598 U.S. 411, 417–23 (2023). But claim-processing rules "may be mandatory in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up). The government has raised the exhaustion requirement here, so we will enforce it. *See Kolov v. Garland*, 78 F.4th 911, 916–19 (6th Cir. 2023) (holding that an order denying withholding of removal is a "final order of removal" because "such relief could foreclose an avenue of deportation if granted"). We therefore decline to address Zakariya's challenge to the IJ's denial of withholding of removal.

## D.    CAT protection

Zakariya further contends that he would more likely than not be tortured in Iraq with the consent or acquiescence of the Iraqi government. The United States government has not argued that § 1252(d)(1)'s exhaustion requirement precludes us from considering this argument and, even if it had done so, this court has held otherwise. *See Solaka*, 844 F. App'x at 801 ("[*Nasrallah v. Barr*, 140 S. Ct. 1683 (2020)]'s holding that '[a] CAT order is distinct from a final order of removal and does not affect the validity of a final order of removal' likewise removes CAT claims from [§ 1252(d)(1)]'s exhaustion requirement." (quoting *Nasrallah*, 140 S. Ct. at 1694)). We will therefore address Zakariya's claim for CAT protection.

8

"The CAT protects those who would more likely than not be subject to torture 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'" *Turcios-Flores v. Garland*, 67 F.4th 347, 359 (6th Cir. 2023) (quoting 8 C.F.R. § 1208.18(a)(1)). As a result, "a petitioner may be without CAT protection even if it is more likely than not that they will be tortured by private parties, so long as the government has not consented to, acquiesced in, or engaged in willful blindness towards this torture." *Id.*

Zakariya cites to various country-conditions reports to argue that he will likely be detained and tortured by Iraqi security forces upon his return to Iraq. But the IJ concluded that Zakariya, a Chaldean Christian, was not likely to be detained and tortured because "much of the evidence of torture that [Zakariya] relies upon is specific to Sunni individuals—not Christians." Although Zakariya presented credible evidence that Iraqi security forces like the Popular Mobilization Forces (PMF) or Islamic militias like Da'esh torture Christians, the IJ found that the Iraqi government "has successfully fought against Da'esh for several years" and "has cracked down on those abuses since absorbing the PMF." And this court has affirmed the denial of CAT protection where, as is the case here, "evidence in the record supports the conclusion that [the country] is trying to prevent . . . violence and extortion—even if it failed in [the petitioner]'s case." *See id.*

To the extent that Zakariya argues that the BIA failed to consider the aggregate probability of torture based on his ties to the United States and refugee status, the argument lacks merit. The IJ considered those factors when addressing withholding of removal under the INA, and clarified that he relied on "the totality of the evidence" when rejecting Zakariya's CAT claim. The IJ also specifically addressed risks from both the PMF and the Iraqi government. *See Marqus*, 968 F.3d at 589–90. Zakariya does not explain why this would be insufficient. Consequently, we cannot

conclude that this is a case where "the evidence not only supports a contrary conclusion, but indeed compels it" regarding Zakariya's claim for CAT protection. *See Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014) (cleaned up).

**E.      Motion to reopen**

Finally, Zakariya argues that the BIA abused its discretion in denying his motion to reopen based on changed country conditions in Iraq. We disagree.

As a preliminary matter, the government contends that Zakariya's motion to reopen is procedurally defaulted because he did not attach a copy of his application for relief with his motion. We need not decide whether Zakariya's motion to reopen is defaulted, however, because the BIA did not abuse its discretion in denying the motion on the merits.

Zakariya is correct that this court "ha[s] found evidence of a material change in country conditions when the petitioner showed that persecution of her social group had 'escalated' since the original immigration proceeding." *Dieng v. Barr*, 947 F.3d 956, 962 (6th Cir. 2020). But after reviewing Zakariya's new evidence, the BIA concluded that "this evidence does not demonstrate materially changed conditions, but rather a continuation of earlier conditions already established in the record."

On appeal to this court, Zakariya does not explain how the evidence he submitted establishes that conditions in Iraq have changed or worsened since 2019. He argues that a report submitted by Dr. Tarek Ramadan "addresses the unique particularized reasons why Mr. Zakariya will be targeted for torture." But Dr. Ramadan does not explain in his report how the treatment of Christians in Iraq has *changed* since 2019. He instead notes that, for example, Christians "continue to be subjected to demographic engineering in their former hometowns," Da'esh "continues to launch attacks across the country into 2022," and "[o]utside Baghdad, Christians continue to be

violently targeted, presumably by militias and religious extremists." These findings are consistent with a report from the United States Commission on International Religious Freedom that Zakariya also submitted, which noted that "religious freedom conditions in Iraq improved slightly but remained concerning."

We do not minimize Zakariya's understandable fears of returning to Iraq—a country in which he has not lived or visited for more than two decades—given that his family members have been kidnapped, had their property seized, and been forced to flee. But on this record, we cannot say that the BIA abused its discretion in concluding that the mistreatment of Christians in Iraq has not escalated since Zakariya's merits hearing in 2019. *See Yousif v. Garland*, 53 F.4th 928, 936–37 (6th Cir. 2022) (holding that the BIA did not abuse its discretion in finding that newly submitted evidence was "cumulative" where the evidence showed that Christians continued to face difficulties in Iraq).

Zakariya also contends that the BIA's denial of his motion to reopen was arbitrary and capricious. He supports this argument by citing to seven nonprecedential decisions by Detroit-based IJs granting CAT protection to other Chaldean Christians who were ordered removed to Iraq. We acknowledge that "the BIA can be arbitrary and capricious if it applies the wrong legal standard to the facts before it or fails to explain 'inconsistent outcomes' that aren't 'readily apparent.'" *Id.* at 938 (quoting *Ishac v. Barr*, 775 F. App'x 782, 788–89 (6th Cir. 2019)). In this case, however, none of the unpublished decisions submitted by Zakariya were decided on a motion to reopen or addressed whether conditions in Iraq for Chaldean Christians have deteriorated since 2019. *See Khalasawi v. Garland*, No. 23-3352, 2023 WL 6531566, at *1 (6th Cir. Oct. 5, 2023) ("Nor is [the petitioner] entitled to relief on the ground that Detroit immigration judges have granted relief to other Chaldean Christians. None of those decisions came on a motion

11

to reopen, and thus none of them involved the same standard we apply here."). The BIA therefore did not act arbitrarily or capriciously in denying Zakariya's motion to reopen.

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Zakariya's petition for review.