NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0179n.06
Case No. 25-3477

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 20, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ASIF UR REHMAN, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| TODD W. BLANCHE, Acting U.S. Attorney General | ) | APPEALS |
| | ) | |
| Respondent. | ) | O P I N I O N |

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Petitioner Asif Ur Rehman seeks review of the Board of Immigration Appeals' order denying his motion to remand and dismissing his appeal of the immigration judge's decision denying his claims for asylum and withholding of removal. For the reasons stated below, we deny the petition for review.

I.

Rehman is a native and citizen of Pakistan. He served in the Pakistani Air Force from 1973 until his retirement in 2007. During his military service, among other responsibilities as Provost Marshal, Rehman conducted investigations and issued arrest orders for members of the military who were suspected of extremist activities.

According to Rehman, his work rooting out extremists led to danger for him and his family. In 2002, a man in a car attempted to abduct Rehman's daughter, Onaiza, while she was playing

outside in Pakistan. When Rehman later found and interrogated the driver, he learned that the man was a member of the military who was paid to kidnap Onaiza. Rehman reported the incident to a superior officer, and the military relocated him and his family to Paris for their safety. Rehman returned to Pakistan in 2005 and took early retirement. He then moved to the United States in 2007 to join his children, who had departed to the United States in 2005 on F1 education visas.

Rehman entered the United States on January 19, 2007. In March 2019, Rehman received a Notice to Appear, which placed him in removal proceedings. Rehman retained Dennis Clare to represent him in his immigration proceedings. Rehman filed an application for cancellation of removal based on his qualifying relative, Mary Burke, his legal spouse at the time. But Burke died before the scheduled hearing. Clare withdrew Rehman's application for cancellation of removal and did not file a widow petition on Rehman's behalf. Instead, Rehman applied for asylum and withholding of removal. He claimed fear that if he were to return to Pakistan, he would be harmed by the suspected extremists he ousted during his military tenure or by the Pakistani intelligence services ("ISI") who might believe, based on his many years of residence in the United States and insight into Pakistani intelligence, that Rehman cooperated with the United States government.

According to Rehman, Clare offered minimal assistance in preparation for his immigration hearing. Specifically, Rehman asserts that Clare provided no help with preparing his asylum statement or his testimony, failed to inform him of the need for corroborating evidence, and assured him that the materials submitted sufficed. During the hearing itself, Rehman claims that Clare kept falling asleep.

Following the hearing, in which both Rehman and Onaiza testified, the immigration judge ("IJ") rendered an oral decision denying relief and granting voluntary departure. Rehman appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Clare died shortly after filing the

appeal. Rehman retained new counsel who filed a motion to remand proceedings to the immigration court based on Clare's ineffective assistance of counsel ("IAC") and new evidence. In support of this motion, Rehman submitted three affidavits from his former colleagues from the Pakistan military and evidence that one of his sons had recently become a lawful permanent resident of the United States. The BIA denied the motion to remand and dismissed Rehman's appeal.

## II.

Circuit courts have jurisdiction to review a "final order of removal." 8 U.S.C. § 1252(a)(1). Where the BIA "issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination," but we also consider the IJ's decision to the extent the BIA adopted the IJ's reasoning. *Mateo-Esteban v. Garland*, 125 F.4th 762, 766 (6th Cir. 2025) (citation modified). Although we apply de novo review to the BIA's legal conclusions, we examine its factual findings for "substantial evidence," treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citation omitted). On the question of remand, we review the BIA's denial of a motion to remand for abuse of discretion. *Yousif v. Garland*, 53 F.4th 928, 936 (6th Cir. 2022). The BIA abuses its discretion if it fails to offer a rational explanation for its decision, departs from established policies, or makes its decision based on an impermissible basis such as illegal discrimination. *Id.* We review claims of ineffective assistance of counsel de novo. *Kada v. Barr*, 946 F.3d 960, 964 (6th Cir. 2020); *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015).

## III.

*Appeal on the Merits.* Rehman argues that the BIA erred in determining that he failed to establish a prima facie case for relief and rejecting his motion to remand based on ineffective

assistance of counsel. We disagree. As the BIA properly observed, even assuming Clare's ineffective assistance before the IJ, Rehman could not succeed in his quest for remand if the additional evidence presented to the Board did not render relief reasonably likely. After all, the BIA may deny a motion to remand where the petitioner "fails to establish a prima facie case of eligibility for the relief sought." *Ahmed v. Mukasey*, 519 F.3d 579, 585 (6th Cir. 2008). And to establish a prima facie case for relief, Rehman was required to "present evidence that reveal[ed] a reasonable likelihood that the statutory requirements for relief have been satisfied." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249–50 (6th Cir. 2018) (citation modified).

To be eligible for asylum, an applicant must show that he is "unable or unwilling" to go back to his country of citizenship "because of past persecution or a well-founded fear of [future] persecution on account of a protected group." *Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024) (citation modified). And a successful applicant for withholding of removal will show that if removed, his "life or freedom would be threatened" there "because of" a protected ground. 8 U.S.C. § 1231(b)(3)(A). Withholding of removal carries a heavier burden of proof: The petitioner must prove a "clear probability" of future persecution, while asylum requires only a "reasonable possibility." *Al-Ghorbani v. Holder*, 585 F.3d 980, 993–94 (6th Cir. 2009). So layering on top the standard for remand, Rehman needed to show a reasonable likelihood that he could prove entitlement to asylum and withholding of removal according to their respective burdens of proof.

The BIA concluded that Rehman did "not meaningfully contest" the IJ's conclusion that he failed to show past persecution—including that any past harm was motivated by a protected ground—or a well-founded, non-speculative risk of future persecution. (A.R. at 4). So he failed to establish a prima facie case for asylum. In his opening brief, Rehman largely ignored the BIA's

determination that he did not show that he suffered past persecution or had a well-founded fear of future persecution. After Respondent raised this oversight in his briefing, Rehman denied forfeiting the argument and replied with full briefing on past and future persecution to satisfy his prima facie case for relief on this basis. We ordinarily treat such delayed arguments as forfeited. *See, e.g.*, *Gafurova v. Whitaker*, 911 F.3d 321, 327 n.2 (6th Cir. 2018). But here, both sides have now fully briefed the issue. And regardless of whether we treat Rehman's argument as forfeited or decide it on the merits, the result is the same.

In short, substantial evidence supports the BIA's conclusion that Rehman did not establish that he suffered past persecution or has a well-founded fear of future persecution.[1] Rehman points to the attempted kidnapping of his daughter, which he attributes to his investigations into extremism in the military. But this single incident, troubling as it may be, does not rise to the level of persecution. *See Lumaj v. Gonzales*, 462 F.3d 574, 577–78 (6th Cir. 2006) (finding no persecution where police officers attacked, beat, and attempted to kidnap petitioner, reasoning that "one, isolated incident, of limited severity, does not constitute 'persecution'"); *Kukalo v. Holder*, 744 F.3d 395, 401 (6th Cir. 2011) (finding no past persecution where petitioner faced only threats and no physical harm). The unsuccessful attempted abduction was both isolated and without physical harm to anyone. And when Rehman returned to Pakistan after his respite in Paris, he remained in Pakistan for two years, apparently undisturbed by any threats or attempted violent reprisals. Moreover, there is no evidence that the would-be kidnappers were motivated by Rehman's political opinion, as he claims, as opposed to simply "retaliation for [his] role in the removal of extremists from the military," as the BIA found. (A.R. at 4).

---

[1] The Supreme Court's recent decision in *Urias-Orellana v. Bondi*, 607 U.S. ---, 146 S. Ct. 845, 848 (2026), held that courts of appeals must review for substantial evidence the BIA's determination of whether a set of undisputed facts constitutes persecution.

There is also substantial evidence supporting the BIA's conclusion that Rehman did not establish a well-founded fear of future persecution. To show a well-founded fear of future persecution, Rehman must show more than vague, speculative threats of future harm. *See Lin v. Garland*, 81 F.4th 629, 635 (6th Cir. 2023). Rehman's evidence before the IJ, even when combined with the additional evidence he presented to the Board, fell short.

In support of his motion to remand, Rehman submitted affidavits from a few former military colleagues. Even considering their statements, however, the record does not compel a different result. Amir Hussain avers that Rehman would face "grave danger" if removed to Pakistan because people and "groups he targeted in his investigations still wield significant power in the country." (A.R. at 72). Mukhtar Ahmed, who was Rehman's subordinate in the military, attested to Rehman's "numerous decisions for the upkeep of name & respect of the [c]ountry" and indicated that he still anticipated threats to the lives of Rehman and his children. (A.R. at 78). And Muhammad Afzal's affidavit relayed an incident from 2019 that occurred at Rehman's mother's funeral where several individuals approached Afzal to find out Rehman's whereabouts and ask when he would be arriving in Pakistan. From Afzal's reading of the situation, these inquisitors were not friends or family, and they appeared to mean Rehman harm. However, Afzal's affidavit neither identifies these individuals nor mentions whether they were members of the ISI or former military members affected by Rehman's investigations. So assessing their motives is an exercise in speculation. Because the affidavits convey, at most, vague and speculative threats of future harm, adding them to the evidence presented to the IJ shows neither a reasonable possibility nor a clear probability of future persecution. *See Vasquez-Rivera*, 96 F.4th at 907–08. Therefore, Rehman necessarily fails to show a reasonable likelihood that his claims for asylum and withholding of removal would be successful. This conclusion dooms his petition for review.

IV.

*Motion for Remand.* Still, Rehman argues that remand is available because, in his view, the Board failed to apply the proper prejudice standard for IAC claims. On this point, Rehman appears to take issue with the BIA's conclusion that he "has not shown he was prejudiced by his counsel's performance, as he has not shown a reasonable likelihood that a valid protected ground exists upon which asylum or withholding of removal under the INA would be granted." (A.R. at 4). In particular, Rehman contends that the BIA's use of "would" misstates his burden because he was required only to show that the outcome "could" have been different absent Clare's ineffectiveness. And he argues that the BIA's reference to "reasonable likelihood" rather than "reasonable probability" also misstates the standard for prejudice. But this is just semantics; in context, likelihood and probability are not meaningfully different.[2] And nothing in the BIA's decision suggests that it required Rehman to prove with certainty that he was entitled to relief. The BIA, therefore, did not misapply or confuse the standard for prejudice.

Nor did it abuse its discretion in denying remand. Succeeding on his motion for remand based on IAC required Rehman to (1) satisfy the evidentiary requirements set forth in *In re Lozada*, 19 I. & N. Dec. 637, 639 (B.I.A. 1988), and (2) show that "he was prejudiced by his attorney's action or inaction" by "demonstrat[ing] a reasonable probability that, but for his counsel's ineffective assistance, he would have been entitled to remain in the United States." *Kada*, 946 F.3d at 964–65. The BIA presumed satisfaction of the first requirement, and it is not in dispute here. But the parties disagree on the question of prejudice. "The prejudice inquiry does not

---

[2] *Compare Likelihood*, merriam-webster.com, https://merriam-webster.com/dictionary/likelihood (last visited Apr. 8, 2026) (defining "likelihood" as "the chance that something will happen"), *with Probability*, merriam-webster.com, https://merriam-webster.com/dictionary/probability (last visited Apr. 8, 2026) (defining "probability" as "the chance that a given event will occur").

require proving the certainty of entitlement, but focuses instead on whether a petitioner's claims could have supported a different outcome." *Id.* at 965 (citation modified).

Rehman claims that he was prejudiced by Clare's (1) failure to advise him of the need for corroboration, (2) failure to pursue a CAT claim on his behalf, (3) failure to adequately prepare for the hearing, (4) unprofessional conduct during the hearing, (5) failure to challenge on appeal the incomplete transcript of his immigration hearing, and (6) other ineffective assistance. But these challenges all fail because, even assuming his counsel's ineffectiveness, Rehman has failed to demonstrate a reasonable probability that he would be eligible for relief.

Take his claim regarding corroboration. Rehman insists that if Clare had properly advised him, he would have submitted affidavits from former colleagues in the military who could corroborate the work he did in investigating and removing suspected extremists from the military and the ISI's continued inquiries as to his whereabouts. And, indeed, in support of his motion to remand, Rehman submitted affidavits from former associates stating as much. But, as previously discussed, even considering this new corroborating evidence, there was no reasonable probability that Rehman would be eligible for asylum or withholding of removal since the affidavits could not establish that he suffered past persecution or would likely suffer future persecution.

Rehman also has not established a reasonable probability that he would be eligible for CAT relief if Clare had raised the claim to the IJ. Because his CAT claim draws on the same evidence to show torture that he advanced for his asylum and withholding claims to show persecution, and because the torture standard under CAT is a more stringent requirement than the persecution standard for asylum and withholding, Rehman could not show it was reasonably probable that he could obtain CAT relief. *See Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006); *Mendoza-Jovel v. Bondi*, No. 24-3932, 2025 WL 1069208, at *4 (6th Cir. Apr. 9, 2025). Besides, the record

also fails to establish a reasonable probability of CAT eligibility because any evidence suggesting torture at the hands of public officials is speculative. *See Jado v. Wilkinson*, 847 F. App'x 278, 287 (6th Cir. 2021). And Rehman offered no evidence that any torture would be inflicted at the instigation of or with the consent or acquiescence of the Pakistani government.

As to Rehman's complaint about Clare's lack of preparation for the hearing, he offers no explanation as to how more preparation by Clare could have transformed his chance for relief into a reasonable likelihood of success. *See Jaber v. Mukasey*, 274 F. App'x 469, 476 (6th Cir. 2008) (rejecting a petitioner's IAC claim where the petitioner "failed to explain how he was prejudiced by this conduct, i.e., how increased preparation time or additional meetings with his representative would have made his claims successful" and did not "identify the evidence he would have provided but for the ineffective assistance" (emphasis omitted)). Plus, Rehman does not specify how any other claimed deficiencies in Clare's performance (*i.e.*, unprofessional conduct during the hearing, failure to submit his divorce decree to the IJ, failure to challenge the incomplete transcript, etc.) prejudiced him. He merely states that "these examples of Mr. Clare's ineffectiveness culminate in prejudice . . . such that there is a reasonable probability that . . . the result would have been different." (Rehman Br., ECF 11, 30). Such a conclusory statement is insufficient to establish prejudice.

## V.

Finally, Rehman challenges the BIA's failure to address several of his arguments. For instance, Rehman claims that the BIA failed to consider other claimed prejudice from Clare's ineffective assistance, such as Clare's failure to file a widow petition on his behalf and his unilateral acceptance of voluntary departure. Likewise, he faults the BIA for not addressing his

purported evidence of a newly-available avenue for future relief, the favorable equities, and his merits appeal. But none of these issues have any bearing on the ultimate determination for relief.

Rehman does not claim to be seeking remand "for the purpose of submitting an application for relief" or "for the purpose of . . . apply[ing] for any form of discretionary relief." 8 C.F.R. 1003.2(c)(1). For example, Rehman is not seeking to file a widow petition, as he concedes he is not eligible for any such relief. Instead, Rehman requested the Board to remand "to allow [him] to seek a more thorough presentation of his asylum claim." (A.R. at 37). Similarly, he does not seem to be suggesting that his voluntary departure privilege should be withdrawn or that he is now eligible for adjustment of status such that the BIA should have remanded to allow him the opportunity to pursue that application. Nor do his equities arguments, in which he highlights his positive personal characteristics, raise any new or independent ground for relief. Rather, Rehman appears to be seeking remand only for further consideration of his underlying asylum and withholding of removal claims. Because the BIA properly found no reasonable probability that Rehman could establish a prima facie case for asylum or withholding of removal, it did not need to reach any of these other arguments. *See Rahman v. Bondi*, 131 F.4th 399, 409 (6th Cir. 2025) (declining to reach issues that would be "unnecessary" to the outcome of the case (quoting *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam))).

## VI.

For the reasons stated, we deny the petition for review.